## UNITED GAS CORPORATION v. CITY OF MONROE.

### Civil Action No. 620.

District Court, W. D. Louisiana, Monroe Division.

March 24, 1942.

Sholars & Gunby, of Monroe, La., and Wilkinson, Lewis & Wilkinson, of Shreveport, La., for plaintiff.

S. L. Digby, of Monroe, La., for defendant.

DAWKINS, District Judge.

Complainant invokes the jurisdiction of this court on the grounds, both of diverse citizenship and the existence of a controversy under the Constitution and laws of the United States. It seeks a declaratory judgment to the effect that the defendant city is without power or authority to fix rates for the sale of natural gas to consumers; and, in the alternative, attacks the ordinance by which the city sought to prevent any increase therein, as invalid and unconstitutional for want of notice and hearing, and finally, prays that the defendant be enjoined from interfering with rates established by complainant on September 26, 1941 for commercial and industrial consumers.

A rule to show cause why a preliminary injunction should not issue came on for hearing on February 24, 1942, at which time defendant city, in addition to its answer or return, filed certain exceptions, to-wit, a plea to the jurisdiction and an exception of no cause of action, or that the bill does not state facts entitling plaintiff to relief.

### Exception to the Jurisdiction

This plea is based upon the contention that the amendment to Section 24 of the Judicial Code, Title 28, Sec. 41, sub. 1, U. S.C.A., approved May 14, 1934, and August 21, 1937, prohibits the exercising of jurisdiction in a case of rate making for a public utility. That amendment, as far as pertinent here, provides: "Notwithstanding the foregoing provisions of this paragraph, no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the enforcement, operation, or execution of

any order of an administrative board or commission of a State, or any rate-making body of any political subdivision thereof, or to enjoin, suspend, or restrain any action in compliance with any such order, where jurisdiction is based solely upon the ground of diversity of citizenship, or the repugnance of such order to the Constitution of the United States, where such order (1) affects rates chargeable by a public utility, (2) does not interfere with interstate commerce, and (3) has been made after reasonable notice and hearing, and where a plain, speedy, and efficient remedy. may be had at law or in equity in the courts of such State. Notwithstanding the foregoing provisions of this paragraph, no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the assessment, levy, or collection of any tax imposed by or pursuant to the laws of any State where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State."

Plaintiff seems to concede that, in a proper case, a Federal court could not interfere with the rate-making power of the State or its subdivisions, including a municipality, because of this statute, but contends that the amendment can not apply here for three reasons: First, the defendant city is without authority to fix rates; second, that if such right exists, the requirements of the statute have not been met, in that no "reasonable notice and hearing" has been had; and, third, that complainant has no "plain, speedy and efficient remedy at law or in equity."

We may take notice of the fact that the purpose of this amendment was to stop a widespread practice by non-resident corporations of taking cases involving. local rates into Federal courts, and to compel a resort to the State courts, except where the rate-making authority had, in effect, denied due process of law, by failing or refusing to accord "reasonable notice and hearing". The exception, it would seem, does not include a dispute as to which of two State agencies is vested with regulatory power if notice and hearing are afforded. That is an issue which the State courts are peculiarly qualified to determine, and whatever their decision may be, it is binding upon this court. It becomes necessary, therefore, to analyze the circumstances of this case to see whether it falls within the exception of the statute.

If there was no dispute as to the city's rate-making power, and it failed to give "reasonable notice and hearing", then, unquestionably, this court would be compelled to exercise jurisdiction; so, all the more reason why it should do so if the facts alleged and sworn to by the affidavits establish that the action of the defendant was ultra vires.

It appears from the allegations and the supporting affidavits that when the franchise was granted to the predecessor of the plaintiff by the city, rates were fixed for household or domestic use and for manufacturing establishments, but none for commercial or industrial businesses. These latter were established by agreements between the utility and the customers at various rates from time to time, which, according to the contention of plaintiff, have now become confiscatory or less than the cost to it. After notice to this class of customers, plaintiff increased its rates. This was done on September 26, 1941, and a large majority of those affected accepted the increase without complaint, but a minority objected, refused to pay and tendered amounts in settlement of their accounts calculated at the old rates. Plaintiff then notified them that the service would be discontinued. Some four months later, that is, in January, 1942, the Mayor telephoned the local manager of the complainant and its attorney to appear at the city hall. When they arrived, an informal discussion was had upon the subject, lasting for an hour or two, but no evidence was proferred by the city or anyone for it as to the unreasonableness of the rates, which plaintiff had fixed, nor was it called upon for any proof in support of its contention that the prior rates were confiscatory. The commission council did not convene in official session and appears to have assumed the position that the old rates, should be restored and prevail, until a thorough investigation could be had.

The answer of the defendant does not seriously dispute these facts, but it is claimed that no rates were fixed by the ordinance assailed, and that its only effect was to freeze those which had existed prior to September 26, 1941, until full investigation as to proper rates could be made. The ordinance attacked is as follows:

"An Ordinance relative to the rate at which natural gas may be sold in the City of Monroe, Louisiana.

"Whereas, the United Gas Corporation is distributing and selling natural gas in the City of Monroe, Louisiana, to the inhabitants thereof; and,

"Whereas, said Gas Company recently gave notice to a number of users and consumers of natural gas whom they were serving that the price for which they were selling natural gas would be increased beginning on the 26th day of September, 1941; and,

"Whereas, many of said persons, firms and corporations receiving such notice by the Gas Company of its intention to increase the price at which they were selling natural gas protested to the City Commission Council of the City of Monroe against said increase in the gas rates; and,

"Whereas, many of said customers so notified of the increase of gas rates protested in writing both to the Gas Company and to the City of Monroe against any increase in the rate at which they were purchasing gas; and,

"Whereas, said natural gas distributing company in the City of Monroe has notified a number of said gas users, whose rates the Gas Company had attempted to raise, that unless the higher rate was paid, their services would be disconnected; and,

"Whereas, certain of said gas users of whom the distributing company was demanding an increase rate, after tendering payment based on the rate at which they had been paying over a period of years, but refusing to pay the increased rate, had their gas connections cut off by the Gas Company; and,

"Whereas, after preliminary hearing at which there were present agreed users of gas as well as representatives of United Gas Corporation;

"Now, therefore,

"Section One: Be it ordained by the City Commission Council of the City of Monroe, Louisiana, in special session convened that for such time as may be necessary to allow a full and complete hearing upon the matter of gas rates in the City of Monroe, Louisiana, the gas rates at which natural gas may be sold is hereby fixed at the rate charged by United Gas Corporation on or before the 26th day of September, 1941.

"Section Two: Be it further ordained that the gas rate or price for which gas is sold to the respective consumers shall neither be decreased nor increased below or above the rate at which natural gas was being sold to said respective customers as of date, September 25th, 1941.

"Section Three: Be it further ordained that all ordinances or parts of ordinances in conflict herewith are hereby repealed and that this ordinance shall take effect immediately upon its adoption.

"Adopted and approved on this, the 24th day of January, 1942."

It will be noted that the Act of Congress approved May 14, 1934, and August 21, 1937, applies "where such order (of the rate-making authority)   *   *   *   affects rates chargeable by a public utility" and is not limited to orders increasing or reducing them. If, prior to the increase which complainant made, the city had, without notice and hearing, passed an ordinance prohibiting any change, this would have "affected" the rates in that it would have required the plaintiff, according to its allegations and affidavits, to continue to furnish this class of customers at a loss. Such action would have been as much a violation of the Federal constitution as one reducing them below a fair return, in that it would have constituted a taking of plaintiff's property without due process of law.

I think the showing made warrants the over-ruling of the plea to the jurisdiction, and as a consequence, it follows that the exception of no cause of action or the failure to state facts upon which relief can be granted should be denied also. As to whether this court will be justified in going further into the question of the power of the city to make rates, this can be considered at the trial on the merits. Had "reasonable notice and hearing" been afforded, a Federal court would have been without power to consider the matter on other grounds. Congress seems to have intended that all other issues should be relegated to the State courts.

A preliminary injunction should issue upon the giving of bond in the sum of $25,000, payable to the defendant for the use and benefit of the customers whose interests are involved.